IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROSEANNE KLAWINSKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 10-1390 |
| | ) Electronically Filed |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM OPINION

**I. Introduction**

Plaintiff Roseanne Klawinski ("Klawinski") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f]. Consistent with the customary practice in the Western District of Pennsylvania, the parties have filed cross-motions for summary judgment based on the record developed during the administrative proceedings. ECF Nos. 7 & 9.

After careful consideration of the Commissioner's decision, the memoranda of the parties, and the entire evidentiary record, the Court concludes that the Commissioner's decision is "supported by substantial evidence" and should be affirmed. 42 U.S.C. § 405(g). Therefore, the motion for summary judgment filed by the Commissioner will be granted, and the motion for summary judgment filed by Klawinski will be denied.

## II. Procedural History

Klawinski protectively applied for DIB and SSI benefits on March 31, 2008, alleging disability as of September 4, 2007. R. 64, 68, 92. The applications were administratively denied on July 1, 2008. R. 45, 50. Klawinski responded on August 14, 2008, by filing a timely request for an administrative hearing. R. 13. On December 10, 2009, a hearing was held in Pittsburgh, Pennsylvania, before Administrative Law Judge David J. Kozma (the "ALJ"). R. 26. Klawinski, who was represented by counsel, appeared and testified at the hearing. R. 28-38. Samuel Edelmann ("Edelmann"), an impartial vocational expert, also testified at the hearing. R. 36-39. In a decision dated December 17, 2009, the ALJ determined that Klawinski was not "disabled" within the meaning of the Act. R. 10-21. The Appeals Council denied Klawinski's request for review on August 24, 2010, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. 1. Klawinski commenced this action on October 21, 2010, seeking judicial review of the Commissioner's decision. ECF No. 1. Klawinski and the Commissioner filed cross-motions for summary judgment on February 10, 2011. ECF Nos. 7 & 9. These motions are the subject of this memorandum opinion.

## III. Standard of Review

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565,108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate

explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is

4

> authorized to make, must judge the propriety of such action solely by the grounds
> invoked by the agency. If those grounds are inadequate or improper, the court is
> powerless to affirm the administrative action by substituting what it considers to
> be a more adequate or proper basis. To do so would propel the court into the
> domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

## IV. The ALJ's Decision

In his decision, the ALJ determined that Klawinski had not engaged in substantial gainful activity subsequent to her alleged onset date. R. 15. Klawinski was found to be suffering from an affective disorder, an anxiety-related disorder, a somatoform disorder, hypersomnia, sleep apnea, obesity, attention deficit disorder and back pain. R. 15-16. Her affective disorder, anxiety-related disorder, somatoform disorder, hypersomnia, sleep apnea and obesity were deemed to be "severe" within the meaning of 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii), while her attention deficit disorder and back pain were deemed to be "nonsevere." R. 15-16. The ALJ concluded that these impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 16-17. In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ determined that Klawinski had the residual functional capacity to perform a full range of "unskilled work" that did not involve dealing with members of the general public.[1] R. 17. In light of this assessment, it was determined that Klawinski could not return to her past relevant work as a clerical worker or bakery cashier. R. 20.

---

[1] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a).

5

Klawinski was born on October 15, 1977, making her twenty-nine years old as of her alleged onset date and thirty-two years old on the date of the ALJ's decision. R. 20, 64, 68, 92. She was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c). She had a high school education and an ability to communicate in English. R. 108; 20 C.F.R. §§ 404.1564(b)(4)-(5), 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Klawinski could work as a stock clerk, an office cleaner, or a hotel/motel cleaner. R. 21. Edelmann's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).[2] R. 39.

## V.     Discussion

Klawinski's entire argument relates, in one form or another, to the weight accorded by the ALJ to three different medical opinions. ECF No. 8 at 3-11. Klawinski contends that the ALJ erred in crediting the opinions of a consultative examiner and a nonexamining medical consultant over the opinion of disability expressed by her treating psychiatrist. *Id.* at 3-8. She further argues that this alleged error rendered the ALJ's hypothetical question to Edelmann defective, thereby impugning the value of Edelmann's testimony. *Id.* at 8-10.

Dr. Charles Kennedy, a clinical psychologist, performed a consultative mental examination of Klawinski on June 16, 2008. R. 185. After completing the examination, Dr. Kennedy reported that Klawinski's impairments did not affect her "ability to respond appropriately to supervision, co-workers, and work pressures in a work setting." R. 183. Klawinski was found to be only "slightly" limited in her abilities to make simple work-related

---

[2] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

6

judgments and to understand, remember and carry out detailed instructions. R. 183. Dr. Kennedy indicated that Klawinski's ability to understand, remember and carry out short, simple instructions was not impacted by her impairments. R. 183. Dr. Sharon Becker Tarter, a nonexamining medical consultant, found Dr. Kennedy's assessment to be persuasive. R. 193. On June 27, 2008, Dr. Tarter opined that Klawinski was only "moderately" limited in her abilities to complete a normal workweek without psychologically-based interruptions and to respond appropriately to changes in a work setting, and that she was "not significantly limited" in any other relevant area. R. 191-192.

Dr. Ahmeed Jahangeer, Klawinski's treating psychiatrist, completed a "mental residual functional capacity questionnaire" on February 5, 2009. R. 320-323. Dr. Jahangeer indicated that Klawinski had "[n]o useful ability" to "[a]ccept instructions and respond appropriately to criticism from supervisors," or to "[g]et along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes." R. 322. He further reported that she was "[u]nable to meet competitive standards" with respect to her abilities to maintain attention for two-hour segments, to maintain regular attendance within customary tolerances, to work in coordination with or proximity to others without being unduly distracted, to complete a normal workweek without interruptions from psychologically-based symptoms, to respond appropriately to changes in a routine work setting, to deal with normal work-related stress, to set realistic goals or make plans independently of others, to deal with the stress associated with skilled and semi-skilled work, to interact appropriately with members of the general public, and to travel in unfamiliar places. R. 322-323. Dr. Jahangeer also deemed Klawinski to be "seriously limited" in her abilities to remember work-related procedures, to understand and remember short and simple instructions, to sustain an ordinary routine without special supervision, to perform at a

7

consistent pace without an unreasonable number and length of rest periods, to ask simple questions or request assistance, to understand and remember detailed instructions, to carry out detailed instructions, and to maintain socially appropriate behavior. R. 322-323. He opined that Klawinski's impairments would necessitate her absence from work "[m]ore than four days per month," and that her condition was expected to last for at least twelve months. R. 323.

In his opinion, the ALJ accorded "little weight" to Dr. Jahangeer's assessment because he found it to be an "overestimate" of Klawinski's limitations. R. 18. The ALJ adopted Dr. Kennedy's examination findings and afforded "significant weight" to Dr. Tarter's consultative opinion in determining that Klawinski had the residual functional capacity to engage in unskilled work involving no interactions with members of the general public. R. 17-20. The crux of Klawinski's argument is that the ALJ erred in crediting the opinions of Dr. Kennedy and Dr. Tarter over that of Dr. Jahangeer. ECF No. 8 at 3-8.

It is firmly established that an administrative law judge may not "simply ignore" the opinion of a "competent" and "informed" treating physician. *Gilliland v. Heckler*, 786 F.2d 178, 183 (3d Cir. 1986). For this reason, a treating physician's opinion can be rejected outright only on the basis of contradictory medical evidence. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). "When a conflict in the evidence exists," however, it is the prerogative of the Commissioner to "choose whom to credit." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). The United States Court of Appeals for the Third Circuit has declared that it is generally inappropriate for an administrative law judge to reject the opinion of a treating physician solely on the basis of an opinion rendered by a nonexamining medical consultant. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008). Nonetheless, an examination report submitted by a consultative medical examiner can be afforded more weight

8

than the opinion of a treating physician under certain circumstances. *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985)(remarking that "[a] consulting physician may bring both impartiality and expertise" to the adjudicatory process, whereas a treating physician "may lack an appreciation of how one case compares with other related cases.")

Klawinski attempts to impugn the ALJ's analysis by pointing out that Dr. Jahangeer is a *medical* doctor, and that Dr. Kennedy is only a clinical psychologist. ECF No. 8 at 8. This distinction is of no significance under the present circumstances. The Commissioner's regulations classify both "[l]icensed physicians" and "[l]icensed or certified psychologists" as "acceptable medical sources." 20 C.F.R. §§ 404.1513(a)(1)-(2), 416.913(a)(1)-(2). A medical opinion rendered by a licensed psychologist regarding a matter within his or her area of expertise enjoys the "same status" as an opinion rendered by a licensed physician. *Khem v. Astrue*, Civil Action No. 08-493, 2009 WL 3246944, at *2, 2009 U.S. Dist. LEXIS 91020, at *7-8, n. 2 (E.D.Cal. Sept. 30, 2009). Klawinski does not argue that her impairments were somehow beyond the scope of Dr. Kennedy's expertise. ECF No. 8 at 8. Therefore, the ALJ cannot be faulted for treating Dr. Kennedy's examination report in the same manner that he would treat a similar examination report submitted by a licensed physician.

Because a clear conflict existed between Dr. Kennedy's examination report and Dr. Jahangeer's assessment, the ALJ was free to determine which opinion was worthy of credence. *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505 (3d Cir. 2009). The Court has no mandate to second-guess the ALJ's conclusion that Dr. Kennedy's examination findings were more reliable than Dr. Jahangeer's assessment. *Smith v. Bowen*, 664 F.Supp. 1165, 1169 (N.D.Ill. 1987). It is also worth noting that Dr. Tarter accorded Dr. Kennedy's findings "great weight" in advising that the limitations resulting from Klawinski's impairments did not preclude

the performance of "competitive work on a sustained basis." R. 193. Although Dr. Tarter never examined or evaluated Klawinski, her expert opinion was nevertheless entitled to some consideration. *Williams v. Sullivan*, 970 F.2d 1178, 1185, n. 5 (3d Cir. 1992); *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). The conflict between Dr. Jahangeer's assessment and Dr. Kennedy's examination report was drastic. Dr. Jahangeer identified *disabling* limitations, while Dr. Kennedy's examination revealed the existence of only a few "slight" limitations. R. 183-184, 320-323. In light of the pronounced differences between these two opinions, it was not unreasonable for the ALJ to rely on Dr. Tarter's expert report in assessing Klawinski's residual functional capacity.

At the hearing, Klawinski testified that she typically slept between ten and fifteen hours per night. R. 29. She explained that, under normal circumstances, she would take an "extra nap in the afternoon." R. 30. Klawinski's treatment records indicate that she was sleeping for roughly twenty hours per day during the spring of 2008. R. 176, 178, 278. Her sleep specialist, Dr. Amit Goulatia, suggested that she refrain from driving when feeling "excessively sleepy." R. 176. Nonetheless, Klawinski's condition rapidly improved after Dr. Goulatia doubled the dosage of her Provigil. R. 157-158, 292. On October 28, 2008, Dr. Jahangeer recorded the following observations about Klawinski in a treatment note:

> She reports that she used to sleep excessively and had no energy. She is now being treated with Provigil for sleep apnea and possible narcolepsy and she is doing good in [sic] it and has relative [sic] better energy level and motivation.

R. 292. It was later noted that Klawinski had been experiencing "restful sleep" at night and was "usually planning activities for her and her kids on a daily basis." R. 242.

During the fall of 2008, Klawinski stated that she "loved" her part-time job and co-workers at the Oakmont Bakery. R. 307. Her employment at the Oakmont Bakery was

10

apparently terminated on December 22, 2008, because of unpleasant verbal encounters between her and some customers.[3] R. 31, 37. As of January 6, 2009, Klawinski was "feeling relieved" at the thought that she no longer had to tolerate the "stress" of going to work. R. 268. She testified at the hearing that she could not return to her job as a bakery cashier. R. 37. The ALJ evidently credited this testimony by concluding that Klawinski's impairments precluded her from routinely interacting with members of the general public. R. 17, 37, 39.

Although the ALJ partially credited Klawinski's testimony, he determined that her assertion of total disability was "not credible." R. 20. This determination was based, at least in part, on Klawinski's description of her daily activities. R. 20. At the hearing, Klawinski testified that she typically washed her parents' kitchen floor six times per day.[4] R. 34. The ALJ concluded that this type of activity was "not indicative of a person who [was] totally disabled." R. 19. Where medical evidence supports a finding of disability, it is generally inappropriate for an administrative law judge to rely on a claimant's sporadic or transitory activities as a basis for denying his or her claim. *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988). In this case, however, the ALJ's residual functional capacity finding was supported by both a report provided by a consultative examiner and an opinion rendered by a nonexamining medical consultant. Moreover, Klawinski's testimony concerning her proclivity to clean was seemingly in conflict with her assertion that she was generally too sleepy to engage in work-related activities. R. 183-193. Given the "contradictory content" of this testimony, it was not unreasonable for the ALJ to

---

[3] Klawinski testified that she had been discharged on December 22, 2007. R. 37. Nevertheless, the documentary record indicates that she was still employed by the Oakmont Bakery as of May 12, 2008. R. 120, 127. She apparently identified the wrong year at the hearing.

[4] Klawinski does not argue that the ALJ erred in failing to account for her "obsessive compulsive disorder." R. 34, 39; ECF No. 8 at 3-11.

11

conclude that Klawinski's subjective complaints were not fully credible. *Covone v. Commissioner of Social Security*, 142 Fed.Appx. 585, 588 (3d Cir. 2005).

For the foregoing reasons, the ALJ's residual functional capacity assessment is "supported by substantial evidence" within the meaning of § 405(g). Consequently, Klawinski's argument concerning the ALJ's hypothetical question to Edelmann is without merit. In order for a vocational expert's answer to a hypothetical question to constitute competent evidence of the existence of jobs consistent with the claimant's residual functional capacity, the question itself must adequately convey to the vocational expert all of the claimant's limitations. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004). If a particular limitation is not properly conveyed to the vocational expert, there is a danger that he or she will identify jobs requiring the performance of tasks that would be precluded by that limitation. *Burns v. Barnhart*, 312 F.3d 113, 122-124 (3d Cir. 2002).

In this case, however, Klawinski cannot show that the ALJ's hypothetical question to Edelmann failed to account for a *credibly established* limitation. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). The hypothetical question posed to Edelmann referenced an individual who was limited to simple, repetitive tasks requiring no interactions with members of the general public. R. 39. The question was consistent with the ALJ's subsequent finding that Klawinski was limited to "unskilled work that [did] not involve dealing with the general public." R. 17. This residual functional capacity assessment was actually more restrictive than the assessments supplied by Dr. Kennedy and Dr. Tarter. Dr. Kennedy's examination report did not identify a limitation with respect to Klawinski's ability to deal with members of the general public. R. 183. Dr. Tarter opined that Klawinski's "ability to interact appropriately with the general public" was "[n]ot [s]ignificantly [l]imited." R. 192. Since the more extreme limitations

identified by Dr. Jahangeer were not credited by the ALJ, there was no need for them to be reflected in the hypothetical question posed to Edelmann. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 206 (3d Cir. 2008).

**VI.     Conclusion**

The Commissioner's decision denying Klawinski's applications for DIB and SSI benefits is "supported by substantial evidence." 42 U.S.C. § 405(g). Accordingly, Klawinski's motion for summary judgment will be denied, and the Commissioner's motion for summary judgment will be granted. In accordance with the fourth sentence of § 405(g), the administrative decision of the Commissioner will be affirmed. An appropriate order will follow.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:     All Registered ECF Counsel and Parties